# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 17-cv-00705-REB

MICHAEL BLACK STARR,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

# ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed March 20, 2017, seeking review of the Commissioner's decision denying plaintiff's claims for child's disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of congenital lumbar spinal stenosis, lumbar herniated disc, and obesity. After his applications for child's disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

August 20, 2015.  At the time of the hearing, plaintiff was 24 years old.  He has some level of high school education and no past relevant work experience.  He has not engaged in substantial gainful activity since January 22, 2010, his alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to child's disability insurance benefits or supplemental security income benefits.  Although the medical evidence established plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ determined plaintiff had the residual functional capacity to perform a range of sedentary, unskilled work with certain postural restrictions, including particularly the ability to sit and stand at will.  Because plaintiff had no past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies he could perform.  He therefore found plaintiff not disabled at step five of the sequential evaluation.[2]  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

---

[2]  The ALJ did not cite to nor rely on the three-step sequential evaluation employed in child disability benefits cases.  *See* 20 C.F.R. § 416.924(b)-(d).  Because neither party claims error in this regard, however, I do not address the issue further.

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).³  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy.  **Id.**  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  **Casias v. Secretary of Health & Human Services**, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  **Hamilton v. Secretary of Health and Human Services**, 961 F.2d 1495, 1497-98 (10th Cir. 1992); **Brown v. Sullivan**, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  **Brown**, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  **Hedstrom v. Sullivan**, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  **Musgrave v. Sullivan**, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  **Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

³ Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Plaintiff alleges error at steps three, four, and five of the sequential evaluation, as well as in the Appeals Council's refusal to consider two medical source opinions submitted following the ALJ's decision. Finding no error in any such particular, I affirm.

Plaintiff first argues the evidence was sufficient to demonstrate at step three of the sequential evaluation that he was presumptively disabled under Listing 1.04C.[4] Spinal disorders are presumptively disabling when the following criteria, *inter alia*, are met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C.[5] To be presumptively disabling, an impairment must manifest all the required criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." ***Sullivan v. Zebley***, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) (footnote omitted).

---

[4] The Commissioner's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Aug. 2, 2010), sets forth medical criteria pursuant to which impairments of various bodily systems will be considered presumptively disabling. 20 C.F.R. § 404.1520(d). ***See Sullivan v. Zebley***, 493 U.S. 521, 532, 534–35, 110 S.Ct. 885, 893, 107 L.Ed.2d 967 (1990). Section 1.00 addresses disorders of the musculoskeletal system, and section 1.04 thereunder deals specifically with disorders of the spine.

[5] Plaintiff does not argue that subsections 1.04A or 1.04B are implicated by the facts of this case.

As the Commissioner points out, whatever else it may show,[6] the medical evidence here does not demonstrate plaintiff suffered from weakness as a result of his spinal impairment. (*See* Tr. 189, 195, 201, 213, 219, 223.)[7] Regardless whether the absence of evidence of such weakness is common in cases of lumbar spinal stenosis *vel non* (*see* **Plf. Br App**., Exh. 2), such evidence is still required to satisfy Listing 1.04C.[8] The ALJ thus did not err at step three of the sequential evaluation.

Nor did the ALJ err at step four of the sequential evaluation by failing to consider all plaintiff's alleged impairments. Specifically, plaintiff claims the ALJ failed to consider the impact of obesity on his residual functional capacity. That assertion is contradicted by the record, which shows the ALJ found obesity to constitute a severe impairment (Tr. 15) and expressly considered its impact on plaintiff's other impairments as required by Social Security Rule 02-1p, 2002 WL 628049 (SSA Sept. 12, 2002). (Tr. 21.)[9] Because

---

[6] It further appears that plaintiff's impairment does not meet the requirement that it result in an inability to ambulate effectively, as defined in the listings. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 2b(1). Plaintiff does not argue, and nothing in the record suggests, that he requires any sort of assistive device to walk.

[7] In a related argument, plaintiff claims the Appeals Council erred by declining to consider the later-submitted opinions of Drs. Otteman and Shafer on the ground that they related to a period of time after the ALJ's decision. (Tr. 2.) Because the opinions do not clearly state otherwise, I am hard pressed to find error in that determination. *See* 20 C.F.R. 404.970(b) (evidence not before the ALJ need not be considered unless it is new, material, and relates to the period on or before the ALJ's decision); ***Chambers v. Barnhart***, 389 F.3d 1139, 1142 (10th Cir. 2004) (same).

Regardless, the opinions do not undermine the ALJ's decision in any event. Dr. Shafer acknowledged plaintiff had no weakness to muscle testing, but stated only that plaintiff was weaker relative to his pre-injury state. (*See* **Plf. Br. App.,** Exh. 1 at 2.) Although Dr. Otterman averred plaintiff suffered from "generalized" muscle weakness (*id.*, Exh. 1 at 3), that opinion is contradicted by the entirety of the remainder of the medical record in this case

[8] To the extent plaintiff contends that evidence of a lack of deep tendon reflexes should be considered medically equivalent to a finding a weakness for purposes of the listing, by failing to raise this particular issue in his opening brief, he has waived it. ***Denunez v. Colvin***, 2013 WL 1873284, at *3 n.3 (D. Colo. May 6, 2013) ***Butler v. Astrue***, 2012 WL 1520154 at *3 n.3 (D Colo. April 30, 2012).

[9] He noted particularly in this regard that although there was no evidence plaintiff's weight had changed significantly over time (Tr. 21), plaintiff had reported engaging in a wide range of strenuous physical activities prior to his alleged date of onset (Tr. 20).

nothing in the ALJ's opinion gives me reason to doubt his assertion that he did account for the effects of obesity in assessing plaintiff's residual functional capacity, there is no reversible error in this regard.[10]  **See Hackett v. Barnhart**, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter."); **Lyda v. Colvin**, 221 F. Supp. 3d 1254, 1258 n.3 (D. Colo. 2016) ("[N]othing in the ALJ's opinion overall gives the court reason to doubt his assertion that he in fact did consider all such impairments in reaching his determination.").[11]

Although plaintiff also faults the ALJ for discrediting his reports of pain and functional limitation, I perceive no error in this regard either.  "[C]redibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  **White v. Barnhart**, 287 F.3d 903, 909 (10th Cir. 2001) (quoting **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Here, the ALJ thoroughly reviewed the scant medical evidence and fully substantiated his conclusion that plaintiff's subjective reports of his symptoms and limitations were inconsistent with the record.  **See** 20 C.F.R. § 404.1529(c)(2); **Luna v. Bowen**, 834 F.2d 161, 165 (10th Cir. 1987).  The ALJ pointed to specific evidence of record demonstrating that plaintiff's treatment history was sporadic; that he took no medication for pain and had declined

---

[10] Indeed, the ALJ expressly reduced plaintiff's lifting capacity from the 30 pounds suggested by the consultative examiner to 10 pounds in light of his impairments, including obesity. (Tr. 17.)

[11] Plaintiff likewise claims the consultative examiner, Dr. John Mars, on whose opinion the ALJ principally relied on crafting plaintiff's residual functional capacity, imposed no limitations related to obesity.  It is unclear how plaintiff arrives at this conclusion.  As Dr. Mars specifically included morbid obesity as a diagnosis (Tr. 190), there seems no reason to doubt that he took that impairment into consideration in formulating his opinion, regardless whether he so specified.  Yet even if there were any error in this regard, it undoubtedly was harmless, as the ALJ declined to adopt Dr. Mars's 30-pound lifting restriction in recognition, *inter alia*, of plaintiff's obesity.  (Tr. 17.)  **See Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988); **Jack v. Astrue**, 2010 WL 3615022, at *3 (D. Colo. Sept. 10, 2010).

7

physicians' recommendations for surgical or other, more aggressive, interventions[12];
and that he had given vague and inconsistent accounts as to the genesis of the exacerbation of his condition and had at the least exaggerated (if not entirely fabricated) a neurosurgeon's estimation that he "had the back of an 80-year old." (*See* Tr. 17-21.) All these factors are appropriately considered in evaluating a claimant's credibility. ***See Wall v. Astrue***, 561 F.3d 1048, 1069 (10th Cir. 2009) (conservative treatment); ***Knuutila v. Colvin***, 127 F.Supp.3d 1146, 1152 (D. Colo. 2015) (failure to pursue potentially efficacious treatment); ***Abdelmeged v. Colvin***, 2015 WL 5047645, at *5 (D. Colo. Aug. 26, 2015) (exaggerating symptoms); ***Romero v. Colvin***, 2015 WL 3542783 at *8 (D. Colo. June 5, 2015) (sporadic treatment). There was no error in this regard.

Plaintiff argues further that the ALJ erred at step five of the sequential evaluation by determining "it more likely than not that the claimant has a high school equivalency certificate." (Tr. 22.) Although plaintiff, who was home schooled, now argues he does not have a GED, there is no reversible error in this regard. First, regardless whether plaintiff actually has a high school diploma or GED certificate, the substance of the ALJ's conclusion – that plaintiff had attained a level of education at least equivalent to that of a high school graduate – is thoroughly supported by his review and discussion of the evidence before him, which included a prior statement by plaintiff that he received a GED in the fall of 2013 (*see* Tr. 142), his stated hobbies, and his articulate and coherent presentation at the hearing. (Tr. 21-22.)

Moreover, plaintiff is simply wrong in assuming that his possession of a GED *vel*

---

[12] Plaintiff contends the ALJ improperly relied on these factors because plaintiff had a family history of intolerance to steroids and "reasonably wanted to avoid . . . surgery." (**Plf. Br.** at 8.) The ALJ addressed this issue directly, however, finding plaintiff's assertion that he did not take medications unpersuasive in light of the record, which showed that plaintiff had taken a variety of muscle relaxants at one point in his treatment. (Tr. 17, 212-213, 218, 222, 225-226.)

*non* is determinative of the ALJ's decision at step five. Plaintiff's argument that all the alternative jobs identified by the ALJ require a GED appears to be premised on a misinterpretation of the use of that acronym in the **Dictionary of Occupational Titles** ("**DOT**"). In that context, "GED" stands for General Educational Development, a composite number which measures a job's requirements in terms of the level of reasoning, mathematical, and language skills necessary to perform that job. **See Pacheco v. Colvin**, 83 F.Supp.3d 1157, 1166 (D. Colo. 2015). More particularly, while these levels reflect "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance," those skills "may be obtained from experience and self-study" rather than from (or in addition to) any formal education. **Dictionary of Occupational Titles**, App. C, § III: *Components of the Definition Trailer* (available at: https://occupationalinfo.org/ appendxc_1.html#III) (last accessed February 14, 2018). Thus, the lack of a General Equivalency Diploma does not preclude plaintiff from having the necessary General Educational Development to perform the alternative jobs on which the ALJ relied.[13] Indeed, all those jobs are unskilled, work for which a high school diploma is not a prerequisite in any event. **See** 20 C.F.R. § 404.1564(b)(3).[14] There thus was no error, much less reversible error, in

---

[13] Concomitantly, there would have been no error had the ALJ failed to inquire of the vocational expert at the hearing regarding this supposed conflict between her testimony and the descriptions in the **DOT**, as plaintiff argues. However, the record plainly reveals that he did so inquire and was assured that the vocational expert's testimony in fact was consistent with the **DOT**. (Tr. 22, 51.) **See Social Security Ruling** 00-4p, 2000 WL 1898704 at *2 (SSA Dec. 4, 2000); **Haddock v. Apfel**, 196 F.3d 1084, 1091 (10th Cir. 1999).

[14] Somewhat in passing, plaintiff implies further that the number of these jobs is insufficient to meet the Commissioner's burden at step five. **See** 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a)-(b). **See also Trimiar v. Sullivan**, 966 F.2d 1326, 1330 (10th Cir. 1992). It is not. "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where [the

this regard.

## IV. ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated February 15, 2018, at Denver, Colorado.

**BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge

---

claimant] lives or in several regions of the country," "regardless of whether such work exists in the immediate area in which [the claimant] lives." 42 U.S.C. § 423(d)(2)(A). ***See also Botello v. Astrue***, 376 Fed. Appx. 847, 850-51 (10th Cir. April 26, 2010). The three jobs on which the ALJ relied collectively comprised 118,000 jobs nationally. (Tr. 22.) Although there is no bright-line rule as to what constitutes a significant number of jobs, ***see Trimiar***, 966 F.2d at 1330; ***Hulsey v. Astrue***, 2010 WL 618472 at *4 (D. Colo. Feb. 19, 2010), these numbers plainly are sufficiently significant to satisfy the Commissioner's burden on this issue.